## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN STURTZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>      v.<br><br>BUGABOO NORTH AMERICA, INC.,<br><br>    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

This class action complaint is brought by Plaintiff Ryan Sturtz ("Plaintiff"), individually and on behalf of all others similarly situated ("Class"), against Defendant Bugaboo North America, Inc. ("Defendant"). The allegations set forth below are based on personal knowledge as to Plaintiff's own acts and on investigation conducted by counsel as to all other allegations.

## PARTIES

1.       Plaintiff Ryan Sturtz is a citizen and resident of Pennsylvania.

2.       Defendant Bugaboo North America, Inc. is a California corporation with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

3.       This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are Class members who are diverse from Defendant, and (4) there are more than 100 Class members.

4.       This Court has general personal jurisdiction over Defendant because Defendant is a resident of this state.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of this district.

## FACTUAL ALLEGATIONS

### I.  The Defect

6.      Defendant designs, manufactures, and sells highchairs, car seats, strollers, and other child safety products throughout the United States, including Bugaboo Giraffe highchairs purchased by Plaintiff and Class members ("Highchairs").

7.      The Highchairs suffer from a defect whereby the screws securing the front legs of the highchair can loosen or fall out, allowing the front legs to detach from the rest of the chair ("Defect"). The Defect manifests most often when a child is seated in the highchair with their feet on the footrest. When the child pushes on the footrest, the front legs dislodge from the rest of the highchair, causing the highchair to fall forward while pivoting on the back legs. Serious injury can occur whether the highchair is placed at the edge of a table or in the middle of the floor. And small children who are strapped into the Highchairs cannot catch themselves to prevent injury while they are falling.

8.      The Defect is inherent in the Highchairs and was present at the time of sale.

9.      The Defect can result in serious physical and psychological harm to small children who fall while strapped into the Highchairs.

10.     The Defect is material because it was not disclosed to purchasers and it substantially diminishes the value of the Highchairs which was represented by Defendant.

11.     Had Plaintiff or Class members known about the Defect, they would have not purchased the Highchairs or would have paid substantially less.

### II.  Defendant's Warranty and Representations

12.    Defendant represents that the Highchairs are safe, reliable products.

13.    Defendant represents the Highchairs specifically as safety devices that intended to keep small children safe and secure while seated.

14.    Defendant represents that Highchairs are high quality, premium products, and the Highchairs are priced at over $400.

15.    Safety is a material and necessary feature that parents look for in the Highchairs, and Defendant's representations of safety, reliability, and quality formed part of the basis of the bargain when purchased by Plaintiff and Class members.

16.    Defendant's marketing emphasizes the Highchairs' safety and durability and intends that consumers rely on its representations when making their purchases.

17.    For example, Plaintiff's Highchair is marketed with the following language:

> The chair designed for all ages and adjustable in one second. The Bugaboo Giraffe is lightweight, versatile, and built to last a lifetime.
>
> Built to last in certified natural beechwood
>
> Safe and sturdy, holds up to 100 kg/220 lbs
>
> Built to last with premium-quality materials [1]
>
> Safe and sturdy design
>
> The Bugaboo Giraffe can hold up to 100 kg/220 lbs, and will handle anything your mischief maker throws its way.[2]

18.    Defendant's assembly instructions do not warn consumers that the Highchairs' screws may become loose or fall out if not tightened or inspected properly.

---

[1] https://www.bugaboo.com/us-en/high-chair/bugaboo-giraffe/bugaboo-giraffe-complete-200008017.html
[2] https://web.archive.org/web/20240119170012/https://www.bugaboo.com/us-en/high-chair/bugaboo-giraffe/bugaboo-giraffe-complete-na-black-200008004.html

19.     Defendant's assembly instructional video shows a person barely tightening the small screws that come with the Highchairs.[3]

20.     Defendant's maintenance instructions do not warn consumers that the Highchairs' screws should be inspected or tightened before every use.

21.     Defendant expressly warrants the Highchairs for 24 months, with an optional extension of 24 months by registering the product.[4]

22.     Defendant impliedly warrants the merchantability of the Highchairs.

23.     Plaintiff and Class members reasonably understood the express and implied warranties to warrant against the Defect.

24.     Defendant has not offered or provided an effective and lasting remedy for the Defect pursuant to the express or implied warranties.

25.     Defendant has breached the express and implied warranties by refusing to remedy the Defect or compensate Plaintiff or Class members pursuant to the warranties.

26.     The attempted remedies offered or provided by Defendant pursuant to the express and implied warranties have failed of their essential purposes because they are not effective and lasting remedies.

27.     Plaintiff and Class members are entitled to a remedy that is not restricted by the terms of the express and implied warranties.

28.     Any limitation or exclusion of damages under the express and implied warranties is unconscionable and unenforceable because operation of the limitation or exclusion would deny Plaintiff and Class members an effective remedy and would be grossly unfair and unforeseeable.

---

[3] https://www.youtube.com/watch?v=tPWC5-2CY8U (timestamp 0:25)
[4] https://service.bugaboo.com/s/article/What-is-the-warranty-on-the-Bugaboo-Giraffe?language=en_US&Country=US

### III.  Defendant's Safety Recall

29.    At least as early as December 2024, Defendant has been aware of the Defect because they were notified by Plaintiff.

30.    At least as early as February 2025, Defendant has been aware of other reports of the Highchairs falling apart while children were strapped in based on publicly available reports to the Consumer Product Safety Commission, which also stated that these reports had been sent to Defendant.[5]

31.    There have been reports to the Consumer Product Safety Commission of falls, bruising, cuts, abrasions, lacerations, loss of consciousness, and dispatched ambulances.[6]

32.    On April 17, 2025, Defendant sent an email to known customers:

> Dear customer,
>
> We are reaching out with an important safety update regarding your purchase of the Bugaboo Giraffe high chair.
>
> If the screws connecting the chair's legs weren't fully tightened by the customer during set up, the screws become loose over time. In that case, the legs of the chair can detach from the frame when a baby is seated in the baby set and is pushing against the footrest. This presents a falling hazard.
>
> Safety is paramount to ensure the well-being of our customers and their children. To decrease the potential for incorrect installation of the screws, we have developed a free Repair Kit. This Repair Kit includes:
>
> - A redesigned set of screws;

---

[5] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5144872
[6] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5144872;
https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5232873;
https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5241791;
https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5259014;
https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5259278;
https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5287235;
https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5287776;
https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5299766

- An improved Allen key for easier installation;

- A step-by-step instruction manual.

These updated components are designed to provide better stability. The replacement is simple and can be done at home in just a few minutes.

We recommend you replace the current screws with the revised screws of the Repair Kit using the new Allen key and by following the manual. Even if you believe your current screws are installed correctly, we would recommend that you follow this procedure.

We have created a self-service portal on our website, where you can immediately order your free Repair Kit by clicking on this link (expected delivery within 1 to 2 weeks):

Get your free Repair Kit

In the meantime, if you want to continue using your Bugaboo Giraffe high chair until you have replaced the screws using the Repair Set, you can only do so safely if you put the footrest in its lowest position. You can put the footrest in its lowest position by pressing the two buttons located on either side of the footrest while sliding the footrest down.

We sincerely apologise for any inconvenience and thank you for your understanding. Your child's safety and comfort are our top priority.

Best Regards,

Bugaboo Service Team

33.     Defendant's email immediately places the blame for the Defect on consumers: "If the screws connecting the chair's legs weren't fully tightened by the customer during set up, the screws become loose over time."

34.     But then Defendant tacitly acknowledges that the original screws are not safe by still advising consumers to replace them: "We recommend you replace the current screws with the revised screws of the Repair Kit using the new Allen key and by following the manual. Even if

you believe your current screws are installed correctly, we would recommend that you follow this procedure."

35.     Defendant offered consumers a free repair kit which includes "a new Allen key, screws and an instruction manual."

36.     Despite offering the free repair kit, Defendant could not fulfill orders for the repair kit promptly. Defendant blamed the delay on its collaboration with the Consumer Product Safety Commission.[7]

37.     On June 12, 2025, the Consumer Product Safety Commission issued a safety recall on the Highchairs:

> Hazard: The highchairs pose a fall hazard and risk of serious injury or death to babies because the legs of the chair can detach from the frame if the screws connecting the legs are not properly tightened during assembly.
>
> Units: About 18,280 (In addition, about 2,325 were sold in Canada)
>
> Remedy: Consumers should immediately stop using the recalled highchairs and contact Bugaboo to receive a free repair kit including an Allen key and new screws to install into the product's legs. Bugaboo is contacting all known purchasers directly.
>
> Incidents/Injuries: The firm has received 22 reports of the legs of the chair detaching, including 13 reports of minor injuries.
>
> Sold At: Nordstrom and other specialty stores nationwide and online at www.bugaboo.com and www.Amazon.com from May 2023 through April 2025 for about $380.[8]

38.     The Defect, recall, and repair kit make clear that the Highchairs were improperly designed and manufactured.

---

[7] https://www.consumerreports.org/babies-kids/baby-product-recalls/stop-using-the-bugaboo-giraffe-high-chair-a3120791853/
[8] https://www.cpsc.gov/Recalls/2025/Bugaboo-North-America-Recalls-Giraffe-High-Chairs-Due-to-Risk-of-Serious-Injury-or-Death-from-Fall-Hazard

## IV.  Defendant's Knowledge, Concealment, Omissions, and Misrepresentations About the Defect

39.     Defendant performed extensive pre-sale testing of the Highchairs, including stress and endurance testing, during which they discovered or should have discovered the Defect.

40.     Defendant obtained numerous pre-release reviews of the Highchairs before they entered the market, from which they discovered or should have discovered the Defect.

41.     Defendant actively monitors reviews and complaints made by consumers to its own website, from which it discovered or should have discovered the Defect.[9]

42.     Defendant also actively monitors reviews and complaints made on websites of Defendant's partnered retailers from which it discovered or should have discovered the Defect.[10]

43.     Moreover, Defendant actively monitors, collects data, and analyzes maintenance and repairs of the Highchairs by authorized servicers, from which it discovered or should have discovered the Defect.

44.     Defendant therefore knows about the Defect and has had ample opportunity to provide a remedy and inform consumers about the Defect.

45.     Defendant knew of the Defect shortly after the Highchairs entered the market due to consumers experiencing the Defect after purchasing the Highchairs and reporting it to Defendant, authorized servicers, or online forums.

46.     Defendant was in a unique position to discover the Defect before the Highchairs were sold and in fact knew of the Defect before it sold the Highchair to Plaintiff and Class Members.

---

[9] https://www.samsung.com/us/home-appliances/refrigerators/3-door-french-door/31-cu-ft-mega-capacity-3-door-french-door-refrigerator-with-four-types-of-ice-in-stainless-steel-rf32cg5400sraa/

[10] *See, e.g.*, https://www.homedepot.com/p/Samsung-31-cu-ft-Mega-Capacity-3-Door-French-Door-Refrigerator-with-Four-Types-of-Ice-in-Stainless-Steel-RF32CG5400SR/326195150

47.    Defendant had exclusive knowledge about the Defect before selling the Highchairs.

48.    Despite Defendant's knowledge of the Defect, Defendant continued its unfair and deceptive trade practices by denying and misrepresenting the Defect and continuing to offer the Highchairs for sale without disclosing the Defect.

49.    Defendant actively concealed the existence of the Defect after it became known to Defendant.

50.    Defendant had a duty to disclose the existence of the Defect after it became known to Defendant but purposefully omitted its knowledge of the Defect when offering for sale and selling the Highchairs.

51.    Defendant misrepresented to purchasers that the Highchairs were designed and manufactured properly and performed properly after the Defect became known to Defendant.

52.    Defendant did not warn purchasers about the Defect either before or after purchasing the Highchairs.

53.    Plaintiff and Class members did not know and could not have discovered through reasonable investigation that the Defect existed or that Defendant's representations about the Highchairs were false, deceptive, or misleading.

54.    Plaintiff and Class members reasonably relied on Defendant's misrepresentations when choosing to purchase the Highchairs because Defendant was in the unique position of having designed and manufactured the Highchairs to inform Plaintiff and Class members about the Highchairs and whether any defects exist.

55.    Plaintiff and Class members relied on Defendant's omission of material information regarding the Defect, as Defendant's failure to disclose the existence of a material defect implied that Defendant had no knowledge of a defect.

56.     But for Defendant's misrepresentations and omissions concerning the Defect, Plaintiff and Class members would have either paid substantially less for the Highchairs or would not have bought them at all.

57.     Defendant engaged in deceptive and unfair acts and practices by concealing and misrepresenting the Defect when offering for sale and selling the Highchairs, and Plaintiff and Class members were injured as a result.

**PLAINTIFF ALLEGATIONS**

58.     Plaintiff purchased a new Bugaboo Giraffe Wooden Baby Highchair from Amazon for $359.00 on June 27, 2023.

59.     In making their purchase, Plaintiff relied on Defendant's representations that the Highchairs were safe, reliable, high quality, premium products.

60.     In or around December 2024, Plaintiff's son was seated in the Highchair when the front legs detached, causing him to fall out of the chair. Though he did not sustain serious injuries, the fall was traumatic, and getting him to use any highchair is now extremely challenging and stressful.

61.     On December 17, 2024, Plaintiff sent a message to Bugaboo support requesting replacement parts for their Highchair because the original parts are unsafe.

62.     On or around May 9, 2025, after Plaintiff received Defendant's emails advising of the safety recall, Plaintiff contacted Defendant and asked for a full refund for their defective Highchair.

63.     Defendant provided Plaintiff with a new Highchair, but that Highchair had the same dangerous Defect.

64.    Defendant ultimately stated that no refunds would be offered, and rather, all consumers would be offered only the repair kit.

65.    Defendant's response reiterated that the Highchairs are not inherently unsafe, and user error causes the legs to detach: "I would like to reiterate that when assembled correctly, the product is safe to use and the screws cannot become loose. However, we recognize with the current Allen Key it is challenging for some to tighten and therefore have improved this with the Repair Kit. We are collaborating closely with the CPSC to get the Repair kits shipped."

66.    Defendant's response also blamed compliance with the Consumer Product Safety Commission for the delay in sending repair kits: "We are closely collaborating with the U.S. Consumer Product Safety Commission (CPSC) to ensure everything meets the highest standards. While this important step prevents us from sending the kits in the earlier provided timeframe, it reflects our shared commitment to safety and transparency."

67.    Plaintiff has not yet received a refund for their Highchair.

## CLASS ALLEGATIONS

68.    This action is brought as a class action under Fed. R. Civ. P. 23.

69.    The Class is defined as follows:

**Nationwide Class:** All persons in the United States who purchased the Highchairs.

**Pennsylvania Subclass:** All persons in Pennsylvania who purchased the Highchairs.

70.    The Class excludes the following: Defendant, their affiliates, their current and former employees, officers, and directors, and the judge assigned to this case.

71.    The Class definition may be modified based upon discovery and further investigation.

72.     *Numerosity*: The Class is so numerous that joinder of all members is impracticable. The Class may be ascertained through discovery of records from Defendant and third parties.

73.     *Commonality*: There are questions of law or fact common to the Class, including, without limitation, whether Defendant engaged in unlawful conduct that entitles Plaintiff and Class members to relief.

74.     *Typicality*: Plaintiff's claims are typical of the claims of Class members. Plaintiff and Class members were injured and suffered damages in substantially the same manner, have the same claims against Defendant relating to the same course of conduct, and are entitled to relief under the same legal theories.

75.     *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with the interests of the Class. Plaintiff's counsel are experienced in the prosecution of complex class actions, including actions with issues, claims, and defenses similar to the present case.

76.     *Predominance and superiority*: Questions of law or fact common to the Class predominate over any questions affecting individual members because all claims arise out of the same unlawful conduct by Defendant and depend on the same determinations of law and fact. A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all Class members is impracticable and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action

presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court. There are no difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

77.    Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(3).

78.    Defendant's unlawful conduct applies generally to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

79.    Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(2).

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (on behalf of Plaintiff and the Class)

80.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

81.    Defendant had a duty to Plaintiff and Class members to ensure that its Highchairs are safe when used under normal conditions in a reasonably foreseeable manner.

82.    Defendant affirmed its duty by marketing the Highchairs as safe and reliable.

83.    Defendant voluntarily undertook this duty by marketing and selling the Highchairs.

84.    Plaintiff and Class members understood that Defendant had this duty because of Defendant's representations of the Highchairs' safety and reliability.

85.    Plaintiff and Class members reasonably relied on Defendant's exercising of its duty when choosing to purchase the Highchairs.

86.     Defendant breached its duty by designing and manufacturing the Highchairs in an unreasonably dangerous manner which creates a high risk of injury.

87.     Defendant breached its duty by failing to warn Plaintiff and Class members of the dangers of using the Highchairs under normal conditions in a reasonably foreseeable manner.

88.     Defendant's breach caused injuries to Plaintiff and Class members.

89.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

## COUNT II
## STRICT LIABILITY
### (on behalf of Plaintiff and the Class)

90.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

91.     Defendant had a duty to Plaintiff and Class members to ensure that its Highchairs are safe when used under normal conditions in a reasonably foreseeable manner.

92.     Defendant affirmed its duty by marketing the Highchairs as safe and reliable.

93.     Defendant voluntarily undertook this duty by marketing and selling the Highchairs.

94.     Plaintiff and Class members understood that Defendant had this duty because of Defendant's representations of the Highchairs' safety and reliability.

95.     Plaintiff and Class members reasonably relied on Defendant's exercising of its duty when choosing to purchase the Highchairs.

96.     Defendant breached its duty by designing and manufacturing the Highchairs in an unreasonably dangerous manner which creates a high risk of injury.

97.     Defendant breached its duty by failing to warn Plaintiff and Class members of the dangers of using the Highchairs under normal conditions in a reasonably foreseeable manner.

98.     Defendant's breach caused injuries to Plaintiff and Class members.

99.     Defendant is strictly liable to Plaintiff and Class members for injuries caused by the Defect because the Defect created an unreasonably dangerous condition.

100.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**
**(on behalf of Plaintiff and the Class)**

101.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

102.    Defendant's representations and written warranty constitute an express warranty pursuant to U.C.C. § 2-313.[11]

103.    The Defect caused the Highchairs to fail to conform to Defendant's representations that formed part of the basis of the bargain.

104.    The warranty covers the Defect and any damage proximately caused by the Defect.

105.    Defendant breached the warranty because they were unwilling or unable to remedy the Defect within a reasonable time, and any attempt to remedy the Defect has been ineffective.

---

[11] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-313: Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. Ann. § 47-2313; Ark. Code. Ann. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. Ann. § 42a-2-313; 6 Del. Code. § 2-313; D.C. Code. § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code. Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code Ann. § 26-1-2-313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; 11 Me. Rev. Stat. Ann. § 2-313; Md. Code. Ann. § 2-313; Mass. Gen. Law Ch. 106 § 2-313; Mich. Comp. Laws Ann. § 440.2313; Minn. Stat. Ann. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code Ann. § 30-2-313; Nev. Rev. Stat. U.C.C. § 104.2313; N.H. Rev. Ann. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Stat. § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2-313; Utah Code Ann. § 70A-2-313; Va. Code § 8.2-313; Vt. Stat. Ann. 9A § 2-313; W. Va. Code § 46-2-313; Wash. Rev. Code § 62A 2-313; Wis. Stat. Ann. § 402.313; and Wyo. Stat. § 34.1-2-313.

106.   Defendant's breach deprived Plaintiff and Class members of the benefit of the bargain.

107.   Defendant's attempt to disclaim or limit the warranty is unconscionable and unenforceable under the circumstances here because:

      a.   Defendant knowingly sold a defective product without informing consumers about the Defect;

      b.   The time limits contained in Defendant's warranty period are unconscionable and inadequate to protect Plaintiff and members of the Class;

      c.   Plaintiff and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendant; and

      d.   A gross disparity in bargaining power existed between Plaintiff and Class Members and Defendant.

108.   The essential purpose of the warranty failed because Plaintiff and Class members are unable to reasonably obtain a workable remedy pursuant to the terms of the warranty, so Plaintiff and Class members are entitled to a remedy that is not limited by the terms of the warranty.

109.   Plaintiff and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

110.   As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

**<u>COUNT IV</u>**
**BREACH OF IMPLIED WARRANTY**
**(on behalf of Plaintiff and the Class)**

111.   All preceding paragraphs are incorporated by reference as though fully set forth herein.

112.    The sale of the Highchairs created an implied warranty of merchantability pursuant to U.C.C. § 2-314.[12]

113.    The Defect caused the Highchairs to be unmerchantable because the Highchairs cannot perform their essential functions according to what the average purchaser would reasonably expect.

114.    The warranty covers the Defect and any damage proximately caused by the Defect.

115.    Defendant breached the warranty because they were unwilling or unable to remedy the Defect within a reasonable time, and any attempt to remedy the Defect has been ineffective.

116.    Defendant's breach deprived Plaintiff and Class members of the benefit of the bargain.

117.    Defendant's attempt to disclaim or limit the warranty is unconscionable and unenforceable under the circumstances here because:

  a.    Defendant knowingly sold a defective product without informing consumers about the Defect;

  b.    The time limits contained in Defendant's warranty period are unconscionable and inadequate to protect Plaintiff and members of the Class;

  c.    Plaintiff and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendant; and

[12] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-314: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Art. 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

d.  A gross disparity in bargaining power existed between Plaintiff and Class Members and Defendant.

118.  The essential purpose of the warranty failed because Plaintiff and Class members are unable to reasonably obtain a workable remedy pursuant to the terms of the warranty, so Plaintiff and Class members are entitled to a remedy that is not limited by the terms of the warranty.

119.  Plaintiff and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

120.  As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

## COUNT V
### FRAUD
### (on behalf of Plaintiff and the Class)

121.  All preceding paragraphs are incorporated by reference as though fully set forth herein.

122.  Defendant represented to Plaintiff and Class members that the Highchairs were reliable, merchantable, and in good repair.

123.  The Defect caused the Highchairs to fail to conform to the performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

124.  Defendant knew or should have known that the Highchairs could not conform to their representations because of the Defect.

125.  Defendant mispresented, concealed, and omitted material information concerning the Defect.

126.    The Defect and the facts mispresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Highchairs or pay a lower price.

127.    Defendant knew or should have known that the facts mispresented, concealed, and omitted were material to Plaintiff and Class members.

128.    Defendant had a duty to inform Plaintiff and Class members of the Defect because Defendant had superior knowledge about the existence, nature, cause, and results of the Defect, and Plaintiff and Class members could not reasonably have been expected to discover the Defect through reasonable diligence before purchasing the Highchairs.

129.    Defendant mispresented, concealed, and omitted material information concerning the Defect in order to induce Plaintiff and Class members to purchase the Highchairs at a substantially higher price than what they would otherwise have paid.

130.    Plaintiff and Class members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing the Highchairs.

131.    Plaintiff and Class members would not have purchased the Highchairs if they knew of the Defect, or they would have only paid substantially less.

132.    Defendant acted in bad faith and with intent to defraud because:

a.    Defendant sold the Highchairs to Plaintiff and Class members with gross disregard for Plaintiff and Class members' rights and wellbeing;

b.    Defendant sold the Highchairs to Plaintiff and Class members with intent to not provide a remedy for the Defect; and

c.    Defendant sought to unjustly enrich themselves to the detriment of Plaintiff and Class members.

133.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

<u>COUNT VI</u>
**UNJUST ENRICHMENT**
**(on behalf of Plaintiff and the Class)**

134.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

135.    Defendant represented to Plaintiff and Class members that the Highchairs were reliable, merchantable, and in good repair.

136.    The Defect caused the Highchairs to fail to conform to the performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

137.    Defendant knew or should have known that the Highchairs could not conform to their representations because of the Defect.

138.    Defendant mispresented, concealed, and omitted material information concerning the Defect.

139.    The Defect and the facts mispresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Highchairs or pay a lower price.

140.    Defendant mispresented, concealed, and omitted material information concerning the Defect in order to induce Plaintiff and Class members to purchase the Highchairs at a substantially higher price than what they would otherwise have paid.

141.    Plaintiff and Class members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing the Highchairs.

142.    Plaintiff and Class members would not have purchased the Highchairs if they knew of the Defect, or they would have only paid substantially less.

143.    Plaintiff and Class members conferred substantial benefits on Defendant by purchasing defective Highchairs at a premium without receiving a product that conformed to Defendant's representations.

144.    Defendant knowingly and willingly accepted and enjoyed these benefits.

145.    Defendant's retention of these benefits would be inequitable because Defendant obtained benefits to the detriment of Plaintiff and Class members when Plaintiff and Class members did not obtain their promised benefits.

146.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class members are entitled to restitution.

**COUNT VII**
**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION LAW
73 P.S. § 201-1, *et seq.*
(on behalf of Plaintiff and the Class)**

147.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

148.    Defendant represented to Plaintiff and Class members that the Highchairs were reliable, merchantable, and in good repair.

149.    The Defect caused the Highchairs to fail to conform to the performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

150.    Defendant knew or should have known that the Highchairs could not conform to their representations because of the Defect.

151.    Defendant mispresented, concealed, and omitted material information concerning the Defect.

152.    The Defect and the facts mispresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Highchairs or pay a lower price.

153.    Defendant knew or should have known that the facts mispresented, concealed, and omitted were material to Plaintiff and Class members.

154.    Defendant had a duty to inform Plaintiff and Class members of the Defect because Defendant had superior knowledge about the existence, nature, cause, and results of the Defect, and Plaintiff and Class members could not reasonably have been expected to discover the Defect through reasonable diligence before purchasing the Highchairs.

155.    Defendant mispresented, concealed, and omitted material information concerning the Defect in order to induce Plaintiff and Class members to purchase the Highchairs at a substantially higher price than what they would otherwise have paid.

156.    Plaintiff and Class members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing the Highchairs.

157.    Plaintiff and Class members would not have purchased the Highchairs if they knew of the Defect, or they would have only paid substantially less.

158.    Defendant acted in bad faith and with intent to defraud because:

a.    Defendant sold the Highchairs to Plaintiff and Class members with gross disregard for Plaintiff and Class members' rights and wellbeing;

b.    Defendant sold the Highchairs to Plaintiff and Class members with intent to not provide a remedy for the Defect; and

c.    Defendant sought to unjustly enrich themselves to the detriment of Plaintiff and Class members.

159.    Defendant's conduct constitutes deceptive and unfair trade practices in violation of 73 P.S. § 201-1, *et seq.*

160.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

**COUNT VIII**
**VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW**
**N.Y. Gen. Bus. Law §§ 349 & 350**
**(on behalf of Plaintiff and the Class)**

161.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

162.    Defendant represented to Plaintiff and Class members that the Highchairs were reliable, merchantable, and in good repair.

163.    The Defect caused the Highchairs to fail to conform to the performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

164.    Defendant knew or should have known that the Highchairs could not conform to their representations because of the Defect.

165.    Defendant mispresented, concealed, and omitted material information concerning the Defect.

166.    The Defect and the facts mispresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Highchairs or pay a lower price.

167.    Defendant knew or should have known that the facts mispresented, concealed, and omitted were material to Plaintiff and Class members.

168.    Defendant had a duty to inform Plaintiff and Class members of the Defect because Defendant had superior knowledge about the existence, nature, cause, and results of the Defect,

and Plaintiff and Class members could not reasonably have been expected to discover the Defect through reasonable diligence before purchasing the Highchairs.

169.    Defendant mispresented, concealed, and omitted material information concerning the Defect in order to induce Plaintiff and Class members to purchase the Highchairs at a substantially higher price than what they would otherwise have paid.

170.    Plaintiff and Class members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing the Highchairs.

171.    Plaintiff and Class members would not have purchased the Highchairs if they knew of the Defect, or they would have only paid substantially less.

172.    Defendant acted in bad faith and with intent to defraud because:

    a.    Defendant sold the Highchairs to Plaintiff and Class members with gross disregard for Plaintiff and Class members' rights and wellbeing;

    b.    Defendant sold the Highchairs to Plaintiff and Class members with intent to not provide a remedy for the Defect; and

    c.    Defendant sought to unjustly enrich themselves to the detriment of Plaintiff and Class members.

173.    Defendant's conduct constitutes deceptive and unfair trade practices in violation of N.Y. Gen. Bus. Law §§ 349 & 350.

174.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

## PRAYER FOR RELIEF

WHEREFORE, the following relief is requested:

    a.    An order certifying this action as a class action.

    b.    An award of statutory, compensatory, incidental, consequential, and punitive damages and restitution to the extent permitted by law in an amount to be proven at trial.

c.    An order enjoining Defendant's unlawful conduct.

d.    An award of attorneys' fees, expert witness fees, costs, and Class representative incentive awards as provided by applicable law.

e.    An award of interest as provided by law, including pre-judgment and post-judgment interest.

f.    Such other and further relief as this Court may deem just, equitable, or proper.

## JURY DEMAND

Trial by jury is demanded.

Dated: July 10, 2025                          Respectfully submitted,

                                             */s/ Michael M. Weinkowitz*

                                             Michael M. Weinkowitz
                                             Daniel C. Levin *
                                             Nicholas J. Elia *
                                             **LEVIN SEDRAN & BERMAN LLP**
                                             510 Walnut Street, Suite 500
                                             Philadelphia, PA 19106
                                             Tel: (215) 592-1500
                                             mweinkowitz@lfsblaw.com
                                             dlevin@lfsblaw.com
                                             nelia@lfsblaw.com

                                             D. Aaron Rihn *
                                             Sara Watkins *
                                             **ROBERT PEIRCE & ASSOCIATES**
                                             707 Grant Street, Suite 125
                                             Pittsburgh, PA 15219
                                             Tel: (844) 383-0565
                                             arihn@peircelaw.com
                                             swatkins@peircelaw.com

                                             *Attorneys for Plaintiff and the Class*

                                             * *Pro hac vice forthcoming*