USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/10/26

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RYAN STURTZ, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

BUGABOO NORTH AMERICA, INC.,

Defendant.

**25 Civ. 5688 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Ryan Sturtz ("Sturtz") brings this putative class action against defendant Bugaboo North America, Inc. ("Bugaboo"). In his First Amended Complaint (Dkt. No. 23 ("FAC")), Sturtz alleges claims of breach of warranty, fraud, unjust enrichment, and violation of Pennsylvania consumer protection law stemming from Bugaboo's sale of a children's highchair. (See FAC ¶¶ 110-71.) Now before the Court is Bugaboo's motion to dismiss Sturtz's claims and to strike Sturtz's class allegations. (See Dkt. No. 30.) For the reasons stated below, Bugaboo's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART** and Bugaboo's motion to strike is **DENIED** as premature.

## I. BACKGROUND

Bugaboo, a California corporation with its principal place of business in New York, produces children's products,

including the Bugaboo Giraffe highchair (the "Highchair"). (See FAC ¶ 6.) In June 2023, Sturtz, a citizen and resident of Pennsylvania, purchased a Bugaboo Highchair via Amazon for $359.00. (See id. ¶¶ 1, 88.) Around December 2024, while Sturtz's son was seated in the Highchair, the chair's front legs detached, causing Sturtz's son to fall. (See id. ¶ 90.) Fortunately, Sturtz's son was unharmed. (See id.) Sturtz requested and received a replacement Highchair from Bugaboo, but the new chair "had the same dangerous [d]efect." (Id. ¶ 93.)

The Highchair's defect was not limited to Sturtz's chair. On April 17, 2025, Bugaboo sent an email to known customers alerting them that "[i]f the screws connecting the chair's legs weren't fully tightened by the customer during set up, the screws become loose over time," leading to the legs of the Highchair detaching when a child pushes against the Highchair's footrest. (Id. ¶ 33.) Bugaboo offered customers a free "Repair Kit," which included "redesigned" screws, an "improved Allen key for easier installation," and an instruction manual. (Id.) On June 12, 2025, the Consumer Product Safety Commission issued a formal recall for the Highchair, which included as its "Remedy" that consumers contact Bugaboo for a Repair Kit. (Id. ¶ 38.)

Sturtz himself was offered a Repair Kit but does not allege whether he accepted a Repair Kit or attempted to use the new screws and Allen key. (See id. ¶ 94.) Nevertheless, Sturtz alleges that the Repair Kit and redesigned screws "do not remedy the underlying [d]efect." (Id. ¶ 42.)

Unsatisfied with Bugaboo's response, Sturtz brought this action on July 10, 2025, on behalf of himself and all others similarly situated. (See Dkt. No. 1.) In his FAC, Sturtz alleges five causes of action: (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) fraud; (4) unjust enrichment; and (5) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). (See FAC ¶¶ 110-17.) Sturtz seeks to represent a "Nationwide Class," defined as "[a]ll persons in the United States who purchased the Highchairs," as well as a "Pennsylvania Subclass," defined as "[a]ll person in Pennsylvania who purchased the Highchairs." (Id. ¶ 99.) Sturtz seeks an order "enjoining Defendant's unlawful conduct" as well as an award of money damages. (Id. at 26.) In support of his claim for damages, Sturtz alleges that had he or the class members "known about the Defect, they would have not purchased the Highchairs or would have paid substantially less." (Id. ¶ 12.)

On December 16, 2025, Bugaboo filed the present motion to dismiss Sturtz's First Amended Complaint. (See Dkt. No. 31 ("MTD").) Sturtz filed his brief in opposition on January 15, 2026. (See Dkt. No. 33 ("Opp'n").) Bugaboo filed its reply on February 5, 2026. (See Dkt. No. 34 ("Reply").)

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In deciding a Rule 12(b)(6) motion, the court draws all reasonable inferences in favor of the non-moving party. See N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 119 (2d Cir. 2013) (citation omitted).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider the allegations in the complaint as well as "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

## III. DISCUSSION

### A. PRUDENTIAL MOOTNESS

Bugaboo first argues that Sturtz's claims should be dismissed because Bugaboo's recall and repair program renders Sturtz's claims "prudentially moot." (MTD at 5.) Prudential mootness is a discretionary doctrine under which Courts may dismiss claims where events subsequent to the claim's accrual have obviated the need for a judicial remedy. See, e.g., Winzler v. Toyota Motor Sales U.S.A., Inc., 681 F.3d 1208, 1210 (10th Cir. 2012) ("[I]f events so overtake a lawsuit that the anticipated benefits of a remedial decree no longer justify the trouble of deciding the case on the merits, equity may demand not decision but dismissal. When it does, we will hold the case 'prudentially moot.'"). Bugaboo argues here that the Court should dismiss Sturtz's claims because his alleged injury — "that he and other class members paid a premium for the Highchair due to the purported defect" — "has

been fully addressed by Bugaboo's recall and repair program." (MTD at 6.)

Sturtz's claims are not prudentially moot. Contrary to cases in which courts have found a product recall to render a plaintiff's claims prudentially moot, Sturtz does not seek only injunctive relief in the form of a court-ordered recall. See In re: Gen. Motors LLC Ignition Switch Litig., No. 14-MC-2543, 2016 WL 3920353, at *40 (S.D.N.Y. July 15, 2016) (collecting cases). Instead, Sturtz seeks monetary damages. Bugaboo's recall program offers only Repair Kits. (See FAC ¶ 94.) Bugaboo's recall therefore "does not offer the full remedy that Plaintiff seeks" and does not render Sturtz's claims for damages prudentially moot. Rothschild v. Gen. Motors LLC, No. 19-CV-5240, 2020 WL 13581659, at *6 (E.D.N.Y. Sept. 30, 2020) (holding that defendants' recall repair program did not render plaintiff's claims moot as plaintiff sought "monetary and statutory damages in addition to injunctive and declaratory relief"); see also Leonard v. Abbott Labs., Inc., 10-CV-4676, 2012 WL 764199, at *26 (E.D.N.Y. Mar. 5, 2012) (holding that defendant's reimbursement offer was insufficient to moot plaintiffs' claims because it did not offer the complete remedy sought); In re: Gen. Motors, 2016 WL 3920353, at *40 (declining to find that a recall and repair program rendered plaintiff's

claims prudentially moot as "[p]laintiffs seek to recover damages from [defendant] for fraud — not to obtain declaratory and injunctive relief for existing defects.").

For the foregoing reasons, the Court will not dismiss Sturtz's complaint in its entirety as prudentially moot.

B. FAILURE TO STATE A CLAIM

Bugaboo also argues that each of Sturtz's claims should be dismissed as they fail to sufficiently state a claim.

1. Count I: Breach of Express Warranty

Sturtz's first claim, breach of express warranty, will be dismissed. "[B]reach of express warranty claims require (i) a material statement amounting to a warranty; (ii) the buyer's reliance on this warranty as a basis for the contract with his immediate seller; (iii) the breach of this warranty; and (iv) injury to the buyer caused by the breach." Avola v. Louisiana-Pacific Corp., 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013).

Sturtz fails to allege a breach of warranty. The Highchair's limited warranty (the "Limited Warranty"), on which Sturtz bases his claim, does not cover the design defect at the heart of Sturtz's claim. The Limited Warranty expressly covers "[a]ll manufacturing defects in the metal frame [and] plastic components" as well as "[a]ll manufacturing defects in the wooden parts" of the chair, including the "legs,

foot[,] backrest and seat." (Dkt. No 32-1 at 29.)[1] The Limited Warranty further states that it does not cover claims regarding "dissatisfaction with the product in terms of . . . design." (Id. at 30.)

"[A] warranty that protects against defects in materials or workmanship covers manufacturing defects, but not design defects." Catalano v. BMW of N. Am., LLC, 167 F. Supp. 3d 540, 554 (S.D.N.Y. 2016). A manufacturing defect is a "mistake — an unintended deviation from normal or routine production that renders an ordinarily safe product dangerous." Miller v. Hyundai Motor Am., No. 15-CV-4722, 2017 WL 4382339, at *4 (S.D.N.Y. Sept. 29, 2017) (citing Catalano, 167 F. Supp. 3d at 555). A design defect, on the other hand, "'involve[s] products made in the precise manner intended by the manufacturer,' which are unreasonably dangerous as designed." Id. (quoting Urena v. Biro Mfg. Co., 114 F.3d 359, 363 (2d Cir. 1997)).

The Limited Warranty covers manufacturing defects only. By its terms, it applies to defects in the materials and manufacturing of the Highchair. But it does not cover consumers' "dissatisfaction" with the chair's "design" (i.e.,

[1] The Limited Warranty is not attached to Sturtz's FAC but was submitted by Bugaboo in support of its Motion. (See Dkt. No. 32-1 at 29–30.) However, the FAC incorporates the Limited Warranty by reference. (See FAC ¶¶ 22–29 and n.5.) Accordingly, the Court may consider it in deciding Bugaboo's Motion. See Chambers, 282 F.3d at 152.

design defect claims). Sturtz's claim, on the other hand, challenges a design defect, not a manufacturing defect. Sturtz does not allege that the specific chair he purchased or some subset of the chairs Bugaboo manufactured were defective. Instead, Sturtz alleges that the chairs have a "inherent" defect in the "entire design of the leg assembly." (FAC ¶¶ 9, 48.) The defect, Sturtz alleges, can be remedied only by a "redesign of both the leg assembly and screws." (Id. ¶ 49.) In essence, Sturtz's claim is that the chairs, as designed, are unreasonably dangerous — a textbook design defect claim. See, e.g., Catalano, 167 F. Supp. 3d at 554. Because the Limited Warranty does not cover design defects, Sturtz allegations of a design defect are insufficient to allege that Bugaboo breached the Limited Warranty.

Sturtz's argument that his claim concerns a manufacturing defect is not consistent with the allegations in the FAC. As Sturtz argues, the difference between manufacturing and design defects lies with the intention of the manufacturer. See Miller, 2017 WL 4382339 at *4 ("The critical difference between manufacturing defects and design defects is the intention of the manufacturer[.]"). But the question in distinguishing between the two types of claims is whether the alleged defect results from the product being manufactured in accordance with the manufacturer's intended

design — not, as Sturtz argues, whether the manufacturer intended the unsafe result of a defect. (See Opp'n at 11–12.) Nowhere in the FAC does Sturtz allege that the alleged defect is the result of some "unintended deviation" in manufacturing from Bugaboo's design. Miller, 2017 WL 4382339 at *4. Furthermore, Sturtz's proposed class definition of "[a]ll persons in the United States who purchased the Highchairs," is inconsistent with a claim of a manufacturing defect, which, "by definition, are imperfections that inevitably occur in a typically small percentage of products of a given design as a result of the fallibility of the manufacturing process." Gunn v. Hytrol Conveyor Co., No. 10-CV-0043, 2013 WL 2249241, at *8 (E.D.N.Y. May 22, 2013). Because Sturtz fails to allege a defect covered by the Limited Warranty, his claim for breach of express warranty is dismissed.

2. Count II: Breach of Implied Warranty

Sturtz's second claim alleges breach of the implied warranty of merchantability. To succeed on a claim of breach of the implied warranty of merchantability, a plaintiff must show: "(1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect is the proximate cause of the [plaintiff's injury]." Plemmons v. Steelcase Inc., No. 04-CV-4023, 2007 WL

950137, at *3 (S.D.N.Y. Mar. 29, 2007). The defect may arise from "a manufacturing flaw, improper design, or a failure to provide adequate warning regarding the use of the product." DiBartolo v. Abbott Lab'ys, 914 F. Supp. 2d 601, 627 (S.D.N.Y. 2012) (internal quotation marks omitted). "In short, the implied warranty is breached where the product in question is not fit for the ordinary purpose for which it is to be used." Plemmons, 2007 WL 950137, at *3.

Sturtz has sufficiently alleged that Bugaboo breached the implied warranty of merchantability. Sturtz alleges that the Highchair was defectively designed in that "the screws securing the front legs of the highchair can loosen or fall out, allowing the front legs to detach from the rest of the chair." (FAC ¶ 8.) As alleged, the defect renders the Highchair unfit for its ordinary purpose as it "manifests most often when a child is seated in the highchair with their feet on the footrest," the use for which the Highchair was designed and marketed. (Id.) Sturtz further alleges that the defect was present at the time Bugaboo sold the Highchair, an allegation supported by Bugaboo's subsequent recall. (See id. ¶ 9.) Additionally, Strutz alleges that the defect was the cause of his and other class members' financial injury. (See id. ¶ 12.)

Bugaboo does not argue that Sturtz has failed to allege any of the elements of his claim for breach of the implied warranty of merchantability. Instead, Bugaboo argues that Sturtz's remedy for any such breach is limited by the Limited Warranty to the repair or replacement of his chair.[2] (See MTD at 8.) Sturtz concedes that the express warranty so limits his remedies but argues that the limitation should be set aside as the warranty has "failed its essential purpose." (See FAC ¶¶ 27, 52; Opp'n at 8-10.)

"Modification or disclaimer of implied warranties," including the limitation of available remedies, "is permissible under the U.C.C. and the analogous relevant provisions adopted by New York . . . and Pennsylvania." Haft v. Haier US Appliance Sols., Inc., 578 F. Supp. 3d 436, 449 (S.D.N.Y. 2022) (internal quotation marks and footnote omitted). But a warranty's limitation of available remedies will be set aside where the warranty fails its "essential purpose." Kraft v. Staten Island Boat Sales, Inc., 715 F. Supp. 2d 464, 475 (S.D.N.Y. 2010). "A warranty fails its essential purpose . . . if the circumstances existing at the time of the agreement have changed so that enforcement of the

[2] The Limited Warranty provides that the purchaser's "exclusive remedy for breach of this warranty or of any implied warranty or of any other obligation arising by operation of law or otherwise shall be limited as specified herein to repair or replacement, at [Bugaboo's] sole option." (Dkt. No. 32-1 at 30.)

limited remedy would essentially leave [a] plaintiff with no remedy at all." Id. at 476 (internal quotation marks omitted). "Generally, courts in this Circuit have found that a warranty failed its essential purpose where the defendant unreasonably delayed in effectuating a repair or repeatedly attempted repairs and was unsuccessful." Rothschild v. Gen. Motors LLC, No. 19-CV-5240, 2020 WL 13581659, at *9 (E.D.N.Y. Sept. 30, 2020).

Sturtz alleges that the warranty fails its essential purpose because Bugaboo's recall and repair program "do[es] not remedy the underlying [d]efect" and leaves Highchair purchasers in "precisely the same position" as before Bugaboo's recall efforts. (FAC ¶¶ 42, 47.) But Sturtz does not allege that he accepted a Repair Kit, much less that he used the Repair Kit provided and the chair still exhibited a defect. Far from alleging that Bugaboo "repeatedly attempted repairs and was unsuccessful," Sturtz fails to allege that he made use of the first repair Bugaboo provided. Rothschild, 2020 WL 13581659, at *9. Sturtz cannot argue that the remedy provided by the warranty has failed when he has not even attempted to make use of it. See id. at *10 (rejecting argument that warranty failed its essential purpose where the plaintiff did not "allege that [d]efendant made numerous

unsuccessful attempts to repair his vehicle while it was under the [w]arranty”).

In the alternative, Sturtz alleges that the Limited Warranty’s exclusive remedy provision cannot be enforced because it is unconscionable. (See FAC ¶¶ 29, 116.) Sturtz appears to abandon these allegations in his Opposition by failing to respond to Bugaboo’s arguments against unconscionability. (See MTD at 11–12; Reply at 5.) Regardless, Sturtz’s allegations of unconscionability are unsupported by allegations of fact concerning the relative bargaining power of the two parties or the reasonableness of the Warranty’s terms. See Haft, 578 F. Supp. 3d at 451–52 (explaining the standard for unconscionability). Sturtz’s allegations amount to “threadbare recitals and conclusory statements” insufficient to plead unconscionability. Id. at 455.

Accordingly, the Limited Warranty’s exclusive remedy provision is enforceable. Sturtz’s remedies for his claim for breach of the implied warranty of merchantability are therefore limited to repair or replacement as provided by that provision. Sturtz’s implied warranty claim is therefore dismissed to the extent it seeks remedies beyond repair or replacement.

3. Count III: Fraud

Sturtz's third claim alleges that Bugaboo committed fraud by "mispresent[ing], conceal[ing], and omit[ing] material information" of the alleged defect. (FAC ¶ 136.) The Court will dismiss Sturtz's fraud claim as he has failed to sufficiently allege the elements of fraud.

To state a claim of fraud under New York law, a plaintiff must allege "(1) a material misstatement, (2) known by the perpetrator to be false, (3) made with an intent to deceive, (4) upon which the plaintiff reasonably relies, and (5) damages." Colpitts v. Blue Diamond Growers, 527 F. Supp. 3d 562, 585 (S.D.N.Y. 2021) (quoting Quiroz v. Beaverton Foods, Inc., No. 17-CV-7348, 2019 WL 1473088, at *10 (E.D.N.Y. Mar. 31, 2019).[3] A plaintiff alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. ("Rule") 9(b). Regarding the knowledge and intent requirements, a plaintiff must "plead scienter, and although it may do so generally . . . the plaintiff must still allege facts that give rise to a strong inference of fraudulent intent." Colpitts, 527 F. Supp. 3d at 585 (quoting Hesse v. Godiva Chocolatier, Inc., 463 F. Supp. 3d 453, 472 (S.D.N.Y.

[3] The parties' briefs assume that New York law applies to Sturtz's fraud claim, and such "implied consent . . . is sufficient to establish choice of law." Chau v. Lewis, 771 F.3d 118, 126 (2d Cir. 2014) (quoting Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000)).

2020)). A plaintiff may establish this inference by "(1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or (2) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id. (internal quotation marks omitted).

Sturtz has failed to sufficiently plead scienter or fraudulent intent. Sturtz alleges that Bugaboo acted "with intent to defraud" because it sold the Highchairs with "gross disregard" for consumers' wellbeing, "intent not to provide a remedy for the Defect," and the intent to "unjustly enrich themselves." (FAC ¶ 143.) Such conclusory assertions of intent fall short of the Rule 9(b) standard. See Colpitts, 527 F. Supp. 3d at 585 (collecting cases). Elsewhere in the FAC, Sturtz alleges that Bugaboo "discovered or should have discovered" the defect prior to sale because of alleged "pre-sale testing" and "pre-release reviews." (FAC ¶¶ 69-70.) But Sturtz does not make any factual allegations of what the alleged "pre-sale testing" revealed regarding the Highchair's functioning and durability. Nor does Sturtz cite a single review identifying the alleged defect prior to his purchase

of the Highchair.[4] Sturtz's bare assertions of fraudulent intent are unsupported by any factual allegations of circumstantial evidence of conscious misbehavior and are therefore insufficient to establish scienter. See, e.g., Hesse, 463 F. Supp. 3d at 473 ("[C]onclusory and legal allegations, devoid of particularized facts giving rise to an inference of scienter, are insufficient to meet Plaintiffs' burden under Rule 9(b).") Additionally, Sturtz does not plausibly allege that Bugaboo had any motive to commit fraud. Sturtz's only allegation as to Bugaboo's motive to commit fraud is that Bugaboo "sought to unjustly enrich themselves." (FAC ¶ 143. But "it is well-settled that a company's general profit motive is insufficient to plead scienter." Anderson v. Unilever United States, Inc., 607 F. Supp. 3d 441, 462 (S.D.N.Y. 2022). Absent more particularized allegations of fact, Sturtz fails to sufficiently allege scienter or fraudulent intent.

Sturtz's allegations are therefore insufficient to state a claim for fraud under the pleading requirements of Rule 9(b). Accordingly, Sturtz's fraud claim is dismissed.

[4] Instead, in two footnotes, Sturtz provides links to reviews of Samsung refrigerators, a product not produced by Bugaboo or at issue in this case. (See FAC ¶¶ 71 n.17, 72 n.18.)

4. Count IV: Unjust Enrichment

Sturtz's fourth claim is for unjust enrichment. This claim will be dismissed because it is duplicative of his contract and tort claims.

"[A]n unjust enrichment claim is not available when it simply duplicates, or replaces, a conventional contract or tort claim." Hesse v. Godiva Chocolatier, Inc., 463 F. Supp. 3d 453, 473 (S.D.N.Y. 2020). Sturtz's unjust enrichment claim is duplicative of his other claims as it relies on the same facts and allegations as those claims. See id. at 473–74. Sturtz argues that he is entitled to plead unjust enrichment in the alternative to his other claims. In support of that argument, Sturtz cites Stanley v. Direct Energy Servs., LLC, 466 F. Supp. 3d 415 (S.D.N.Y. 2020), for the point that "[u]nder Federal Rule of Civil Procedure 8(d), a plaintiff can plead in the alternative such that the claimant can bring both breach of contract claims and challenge the validity of the contract by alleging unjust enrichment." (Opp'n at 18–19.) But Sturtz has never challenged the validity of his warranty. As Stanley goes on to hold, "where the validity of a contract that governs the subject matter at issue is not in dispute, and the claimant alleges breach of the contract, the claimant cannot plead unjust enrichment in the alternative."

Stanley, 466 F. Supp. 3d at 430-31. Consistent with this rule, Sturtz's claim of unjust enrichment is dismissed.

5. Count V: Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law

Sturtz's final claim asserts a violation of the UTPCPL. (See FAC ¶¶ 158-71.) The UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices," as defined by the statute. 73 Pa. Stat. § 201-3.

Bugaboo contends first that because Sturtz's UTPCPL claim is pleaded as fraud, it must be dismissed due to Sturtz's failure to satisfy the requirements of common law fraud and Rule 9(b). (See MTD at 9.) The UTPCPL's catchall provision prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Stat. § 201-2(4)(xxi). Where a plaintiff alleges a violation of the catchall provision based on fraudulent conduct, they must allege the elements of common law fraud. See Seldon v. Home Loan Servs., Inc., 647 F. Supp. 2d 451, 469-70 (E.D. Pa. 2009). But a plaintiff need not allege the elements of common law fraud if they allege only deceptive conduct. See id.; La Vigne v. Costco Wholesale Corp., 284 F. Supp. 3d 496, 516 (S.D.N.Y. 2018) ("[M]ost Pennsylvania courts have held that the 1996 amendment 'lessened the degree of proof required under the UTPCPL

catchall provision' so that plaintiffs alleging deceptive conduct may proceed without satisfying all of the common law elements of fraud." (quoting Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145, 153–54 (Pa. Super. Ct. 2012))), aff'd, 772 F. App'x 4 (2d Cir. 2019).

Sturtz's UTPCPL claim is not pleaded as fraud. Sturtz's allegations in support of his UTPCPL claim largely mirror those in support of his claim of fraud. (Compare FAC ¶¶ 158–71 (Fraud), with FAC ¶¶ 132-44 (UTPCPL).) However, Sturtz explicitly alleges that Bugaboo's conduct in violation of the UTPCPL constitutes "deceptive and unfair trade practices," rather than fraudulent conduct. (FAC ¶ 170.) Sturtz's allegations in support of his UTPCPL claim therefore need not meet the requirements of common law fraud and Rule 9(b). See Schnell v. Bank of New York Mellon, 828 F. Supp. 2d 798, 806–07 (E.D. Pa. 2011) ("[Plaintiff] explicitly references the Defendant['s] 'deceptive acts' and therefore does not need to prove all of the elements of common-law fraud or meet the particularity requirement of Federal Rule of Civil Procedure 9(b).").

Under the less stringent requirements for UTPCPL claims concerning deceptive conduct, Sturtz must allege "(1) a deceptive act, (2) justifiable reliance on that act, and (3) a resulting ascertainable loss." La Vigne, 284 F. Supp. 3d at

517 (cleaned up). A "deceptive act" is conduct that is "likely to deceive a consumer acting reasonably under similar circumstances." Id. (quoting Seldon, 647 F. Supp. 2d at 470). Sturtz sufficiently alleges a violation of the UTPCPL under the standard for deceptive conduct. In the FAC, he alleges that he and other class members justifiably relied on Bugaboo's representations concerning the safety and weight capacity of the Highchair and suffered ascertainable loss in the form of paying more for the product than they would have had they known of the defect. (See FAC ¶¶ 84-86.)

Bugaboo argues that Sturtz has failed to allege a deceptive act or justifiable reliance because the statements identified in the FAC are "non-actionable puffery." (MTD at 19-20.) Puffery, defined as statements of a "patently hyperbolic or excessively vague character that dissuades any reasonable consumer from placing reliance thereon as fact," is not actionable under the UTPCPL. Commonwealth v. Golden Gate Nat'l Senior Care LLC, 194 A.3d 1010, 1024 (Pa. 2018). Some of the statements that Sturtz alleges were deceptive constitute puffery, such as Bugaboo's claims that the Highchair is "safe," "sturdy," and "built to last a lifetime." (FAC ¶ 18.) These statements are non-falsifiable claims about general quality on which a reasonable consumer would not rely. See, e.g., Fusco v. Uber Techs., Inc., No. 17-CV-0036, 2018

WL 3618232, at *6-8 (E.D. Pa. July 27, 2018). On the other hand, Bugaboo's statement that the Highchair "holds up to 100 kg/220 lbs" is not puffery. (FAC ¶ 18.) This statement is "specific enough to be falsifiable" and likely to induce reliance. Fusco, 2018 WL 3618232, at *6. Because Bugaboo's claims as to the Highchair's weight capacity does not constitute puffery — and Sturtz has sufficiently alleged justifiable reliance on that statement and an ascertainable loss — Sturtz's UTPCPL claim will not be dismissed.

Lastly, Bugaboo argues that Sturtz's UTPCPL claim should be dismissed to the extent he seeks damages for emotional distress. (See MTD at 20-21.) Damages for emotional distress are not recoverable under the UTPCPL. See, e.g., Sosso v. ESB Bank, No. 16-CV-367, 2016 WL 3855031, at *5 (W.D. Pa. July 15, 2016). Therefore, to the extent Sturtz seeks emotional distress damages for his UTPCPL claim, his claim will be dismissed. Nevertheless, because Sturtz seeks actual damages in addition to any claim for damages for emotional distress, his UTPCPL claim otherwise survives.

C. MOTION TO STRIKE CLASS ALLEGATIONS

Bugaboo also moves to strike the FAC's class allegations under Rule 12(f). (See MTD at 23-25.) Bugaboo's motion to strike is denied as premature.

Under Rule 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f). "Motions to strike are viewed with disfavor and infrequently granted." Emilio v. Sprint Spectrum L.P., 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) (cleaned up). "A motion to strike class allegations under Rule 12(f) is disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." Blagman v. Apple Inc., No. 12-CV-5453, 2013 WL 2181709, at *2 (S.D.N.Y. May 20, 2013) (cleaned up). Motions to strike class allegations at the motion to dismiss stage are generally considered procedurally premature unless they address issues "separate and apart from the issues that will be decided on a class certification motion." Chen-Oster v. Goldman, Sachs & Co., 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (internal quotation marks omitted).

Bugaboo's motion to strike the FAC's class allegations is procedurally premature. In its motion, Bugaboo argues that variations in state law will lead individual issues to predominate over common questions and that the FAC fails to

allege facts to establish that Sturtz's proposed classes would be "manageable or cohesive." (MTD at 23.) Issues of predominance and manageability are core concerns of class certification. See Fed. R. Civ. P. 23(b)(3). Determination of those questions at this stage is therefore premature. See Travis v. Navient Corp., 460 F. Supp. 3d 269, 286 (E.D.N.Y. 2020). Accordingly, Bugaboo's motion to strike the class allegations is denied. Bugaboo may raise these arguments if Sturtz moves for class certification pursuant to Federal Rule of Civil Procedure 23.

## IV. ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion (Dkt. No. 30) of defendant Bugaboo North America, Inc. ("Bugaboo") to dismiss the First Amended Complaint filed by plaintiff Ryan Sturtz ("Sturtz") is **GRANTED IN PART** and **DENIED IN PART.** Sturtz's claims for breach of express warranty (Claim I), fraud (Claim III), and unjust enrichment (Claim IV) are dismissed without prejudice. Sturtz's claim for breach of implied warranty (Claim II) is dismissed without prejudice to the extent it seeks a remedy beyond repair or replacement. Sturtz's claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Claim V) is dismissed without prejudice to

the extent it seeks to recover damages for emotional distress. Bugaboo's motion is otherwise **DENIED** as to Claims II and V.

It is further **ORDERED** that Bugaboo's motion to strike the class allegations in the First Amended Complaint is **DENIED** as premature.

It is further **ORDERED** that Bugaboo shall file an answer to the remaining claims within twenty-one (21) days of the date of this Decision and Order.

**SO ORDERED.**

Dated: 10 September 2026
New York, New York

_____________________________
Victor Marrero
U.S.D.J.